UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
DERWIN GONZALEZ,

               Plaintiff,

     - against -

THE CITY OF NEW YORK; NYPD OFFICER ZACHARY ZINAMAN (SHIELD NO. 16519); NYPD OFFICER BRENDEN ROGERS (SHIELD NO. 2146); NYPD OFFICER UTSAV DESAI, AND NYPD MEMBER DOES 1-4,

               Defendants.
------------------------------------------------------------------ X

Case No.:

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff DERWIN GONZALEZ (he/him), by and through his attorneys, Cohen&Green P.L.L.C., hereby complains of Defendants as follows:

## **PARTIES**

1. At all times mentioned herein, Plaintiff Derwin Gonzalez is and has been an adult resident of Queens County in the City, and State of New York.

2. At all relevant times mentioned herein, Defendant, City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by the virtue of the laws of the State of New York and acts by and through its agencies, employees, and agents, including (but not limited to) the New York City Police Department ("NYPD") and their employees.

3. Defendant NYPD OFFICER ZACHARY ZINAMAN (SHIELD NO. 16519) was at all times relevant to this Complaint a member of the NYPD assigned to the 9th Precinct. He is sued in his official and individual capacity.

4. Defendant NYPD OFFICER BRENDEN ROGERS (SHIELD NO. 2146) was at all times relevant to this Complaint a member of the NYPD assigned to the 9th Precinct. He is sued in his official and individual capacity.

5. Defendant NYPD OFFICER USTAV DESAI was at all times relevant to this Complaint a member of the NYPD. He is sued in his official and individual capacity.

6. Defendants NYPD MEMBER DOES 1-4 are members of the NYPD assigned to the 9th Precinct whose true names are currently unknown to the Plaintiff. NYPD MEMBER DOES 1-4 are sued herein in their official and individual capacities.

7. At all times hereinafter mentioned, the Defendants were employed by the City of New York as members of the NYPD.

8. At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

9. Each and all of the acts and omissions of the Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

10. Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

11. Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

12. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

13. Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no point did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

14. Each individual Defendant is sued in their individual and official capacities.

**JURISDICTION, VENUE, AND GENERAL MUNICIPAL LAW COMPLIANCE**

15. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

16. The federal civil rights claims in this action are brought pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

17. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

18. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) as at least one of the Defendants resides in this district and a substantial part of the events and/or omissions were committed in this district.

19. Plaintiff timely served a late Notice of Claim on the municipal Defendant and complied with all conditions precedent to commencing an action under state law.

20. Plaintiff has initiated this action within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York State Law

## STATEMENT OF FACTS

21. On November 22, 2023, at or around 10:45 a.m., Plaintiff was present to protest police activity, and to assemble and associate with unhoused people and others in support of unhoused people, located on the sidewalk at or near the intersection of 1st Avenue and 9th Street, in the County, City, and State of New York.

22. Shortly thereafter, at the conclusion of the Defendants' sweep, Mr. Gonzalez was walking to the stationhouse of the 9th NYPD precinct by walking at or around East 5th Street between 1st and 2nd Avenues, in the County, City, and State of New York.

23. During this time, Plaintiff was present on the sidewalk verbally protesting the Defendants' and NYPD's actions.

24. At this time, Defendants Zinaman and Rogers approached Plaintiff.

25. The same Defendants subjected him to excessive force.

26. Specifically, those same Defendants took actions including but not limited to the following:

27. Defendant Zinaman approached and pushed Plaintiff.

28. Defendant Rogers used both his hands and all his body weight to forcefully push Plaintiff into the street.

29. Defendant Rogers charged at Plaintiff.

30. Defendant Zinaman used a taser on Plaintiff, on Plaintiff's back.

31. Defendants Zinaman and Rogers threw Plaintiff to the ground.

32. Defendant Zinaman kicked Plaintiff while he was on the ground.

33. During Defendants Zinaman and Rogers' uses of force, Defendants NYPD Member Does 1-4 were standing nearby.

34. Defendant Does 1-4 stood by, watched, and failed to intervene.

35. Defendant Does 1-4 had the opportunity and duty to do so on Plaintiff's behalf.

36. Following the above-described assault, Defendants applied metal handcuffs to Plaintiff's wrists with extreme tightness.

37. Plaintiff complained about the excessive tightness of the handcuffs.

38. The members of the NYPD to whom Plaintiff complained did not take any steps to alleviate the excessive tightness of the handcuffs until after Plaintiff was forced to endure the excessively tight handcuffs for an extended period of time, including for at least 1 hour while Plaintiff was inside a holding cell at the 9th Precinct.

39. Plaintiff's property was damaged when Officer Rogers used a knife to cut off the string of Plaintiff's hoodie.

40. Although Plaintiff said he could simply take off the hoodie altogether if his handcuffs were removed momentarily, Officer Rogers refused Plaintiff's offer and instead insisted on using a folding knife to cut the string off, all while grabbing Plaintiff's roughly by the chest.

41. Officer Rogers wielding a knife so close to Plaintiff's body put Plaintiff in fear for his safety.

42. Upon information and belief, members of the NYPD created official NYPD paperwork relying on fabricated evidence, including about purported observations of Plaintiff's alleged pre-arrest conduct, and/or forwarded such fabricated evidence to prosecutors and/or initiated charges against Plaintiff, relying on fabricated evidence and without probable cause.

43. Defendant Desai swore out a criminal complaint against Plaintiff.

44. The false statements and evidence fabricated by Defendants include, among other things false statements that Plaintiff disobeyed police orders, Plaintiff struck police officers,

Plaintiff grabbed Defendant Rogers' jacket, that Plaintiff attempted to strike Rogers in the face with a closed fist, and that Plaintiff kicked Defendant Zinaman.

45. At approximately 6 p.m. on November 23, 2023, Plaintiff was finally brought before a judge and released from custody.

46. On February 13, 2024, Plaintiff went to court for the second time and was granted release on his own recognizance, but under court supervision which requires him to make two in-person check-ins and one phone check-in per month with the Court's supervision agency.

47. On March 19, 2024, the felony charges in the criminal proceeding against Mr. Gonzalez were dismissed, leaving only the misdemeanor charges. On June 5, 2024, the criminal proceeding was dismissed in its entirety on speedy trial grounds consistent with Mr. Gonzalez's innocence.

48. Mr. Gonzalez was not engaged in any unlawful, threatening, or violent activity.

49. There was no basis to use any level of force against Mr. Gonzalez much less the level of force actually employed.

50. There was no probable cause or other legal basis to arrest Plaintiff, nor could any of the Defendants have reasonable believe that any such justification existed.

### FIRST CLAIM FOR RELIEF
*Excessive Force*
*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

51. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

52. Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, considering the facts and circumstances that confronted Defendants.

53. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff's bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

54. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF
*False Arrest, Malicious Prosecution, and Denial of Fair Trial*
*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the*
*Fourth and Fourteenth Amendments to the United States Constitution*

55. Plaintiff hereby realleges and incorporates all of the preceding paragraphs as though they were fully set forth herein.

56. The individual defendants willfully and intentionally seized, searched, detained, and arrested Plaintiff, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

57. Plaintiff had not been engaged in any criminal conduct, nor was she engaged in any conduct that could reasonably be viewed as criminal nor a basis to justify his arrest.

58. Despite the absence of sufficient legal cause, Plaintiff was arrested and jailed.

59. By so doing, the individual defendants subjected Plaintiff to false arrest and imprisonment, malicious prosecution, and denial of fair trial, and thereby violated and aided and abetted in the violation of Plaintiff's rights under the Fourth Amendment of the United States Constitution.

60. By reason thereof, the individual defendants have violated 42 U.S.C §1983 and caused Plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

### THIRD CAUSE OF ACTION
*First Amendment Free Exercise and Free Speech Clause*
*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the*
*Fourth and Fourteenth Amendments to the United States Constitution*

61. Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

62. Defendants infringed on Plaintiff's right under the Free Speech and Free Exercise clauses of the First Amendment.

63. Defendants retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment.

64. There is no legitimate state interest that would have justified Defendants' actions, nor were Defendants actions narrowly tailored to achieve any goal other than to violate Mr. Gonzalez's free speech rights.

65. Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

66. Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

67. Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

68. Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiff to violations of his First Amendment rights.

69. Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims—including the

related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

70. Defendants imposed restrictions on Plaintiff's protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in subjecting Plaintiff to excessive force, false arrest, excessive detention, malicious and false prosecution, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

71. In addition to being retaliatory, the restrictions Plaintiff complains of herein that Defendants imposed on Plaintiff's First Amendment right to record were impermissible restrictions on First Amendment rights in that they:

   a. Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

   b. Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiff's protected activity; and/or

   c. Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's ability to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

   d. Amounted to the imposition of strict liability on Plaintiff for engaging in protected First Amendment activity.

72. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

73. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless,

and was of such a nature that punitive damages should be imposed against them.

**First Amendment Retaliation by Violence**

74. It is clearly established that citizens have a right to peacefully assemble and protest police activity.

75. Plaintiff was, and stated he was, exercising that right.

76. In retaliation for, and with the purpose of chilling his expression, Defendants brutally assaulted Plaintiff.

77. By reason thereof, the Defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

**FOURTH CLAIM FOR RELIEF**
*Violations of New York State Law*
*Pursuant to the New York State Constitution and New York State Law*
**Against All Defendants**

78. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

*Respondeat Superior* **Liability**

79. The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

**Violations of the New York State Constitution**

80. Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution.

81. A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiffs' rights under those sections.

**Assault**

82. Defendants committed assault within the meaning of New York common law against Plaintiff by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

**Battery**

83. Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

**Conversion**

84. Defendants committed conversion by intentionally taking possession of and/or interfering with Plaintiff's personal property in derogation of Plaintiff's property rights.

**Negligent Training and Supervision**

85. Upon information and belief, Defendant City negligently trained and supervised the police officials described above.

86. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**False Arrest, Denial of Fair Trial, and Excessive Force**

87. Plaintiff was not a danger to himself or others during either incident described above.

88. There was no legal basis for the Defendants to handcuff and detain Plaintiff.

89. The unlawful conduct of the Defendants in confining Plaintiff to the hospital based on their false allegations were willful, reckless, and malicious.

## FIFTH CLAIM FOR RELIEF
### (*Monell* Claim Against the City of New York)

90. The City Defendant created the policies that led to Plaintiff's arrest and assault. Those policies violate the First Amendment, among other reasons, in that they:

    a. Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

    b. Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiff's protected activity; and/or

    c. Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's ability to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

    d. Amounted to the imposition of strict liability on Plaintiff for engaging in protected First Amendment activity.

91. As set out above, Plaintiff will suffer irreparable harm if that policy is not enjoined.

92. Plaintiff incorporates by reference the pleadings, facts, findings, and so on in the following cases, reports, and the like, as detailed below:

    a. *Mandal v. City of New York.,* 02-cv-1234 (WHP)(FM) (S.D.N.Y.) and related cases challenging NYPD's written and unwritten policies and practices enacted after the police shooting of Amadou Diallo in 1999 and formalized in writing as early as 2001. As a result of these policies, the NYPD began detaining and fully processing people arrested for non-criminal violations who were otherwise eligible to be processed and released with Desk Appearance Tickets ("DATs"). *See, e.g., "Mandal I,"* No. 02-cv-1234 (WHP), 02-cv-1367 (WHP), 02-cv-6537 (WHP), 2006 WL 2950235, at *4-7 (S.D.N.Y. Oct. 17, 2006) (denying summary judgment on plaintiffs' Fourteenth Amendment Equal Protection and First Amendment-based claims that the policies "constituted facial violations of [plaintiffs'] First Amendment rights because they were denied DATs or summonses based on the fact that they participated in demonstrations"); *Mandal v. City of New York* ("*Mandal II*"), No. 02-cv-1234 (WHP), 02-cv-1367 (WHP), 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007) ("*Mandal II*") (noting that

approximately 38 *Mandal* plaintiffs prevailed at trial on claims that "the City had an unconstitutional written policy of denying persons arrested at demonstrations individual consideration for summonses and DATs");

b. *Burley v. City of New York*, 03-cv-2915 (WHP)(FM) 2005 WL 668789 (S.D.N.Y. March 23, 2005) (class action arising from mass arrests of over 200 demonstrators during 2002 WEF in New York City challenging, *inter alia*, (1) NYPD policy of detaining perceived protesters who were otherwise eligible to be released earlier with DATs for excessive periods of time and denying them consideration for DAT release on the grounds of their perceived participation in protests and (2) policy and practice of using plastic flex cuffs as unreasonable and excessive because of the manner in which the handcuffs were applied and the length of time for plaintiffs were handcuffed);

c. *Allen v. City of New York,* 466 F. Supp. 2d 545, 546 (S.D.N.Y. 2006) (challenging mass arrests made in February 2002 related to the WEF alleging, *inter alia*, that the protestors remained on the sidewalk, walking two abreast and followed all rules of protesting, yet Executive Officers including Defendant Monahan, arrested them and "the police deliberately held [protesters] in custody for an unnecessarily long period of time in order to delay their arraignment in Criminal Court";

d. *Haus v. City of New York,* 03-cv-4915 (RWS)(MHD) 2006 WL 1148680, *1 (S.D.N.Y. April 24, 2006) (class action challenging arrests, detentions, and prosecutions of around 300 people in connection with February 15, 2003 anti-war protests, alleging that arrests were made without probable cause and pursuant to Department directive to "engage in pre-emptive mass arrests and to subject arrestees to delayed and arduous post-arrest processing." *See also Larsen v. City of New York, et al.*, 04-cv-0665 (RWS) (S.D.N.Y.);

e. *Kunstler v. City of New York*, 04-cv-1145 (RWS)(MHD) (S.D.N.Y.) and other related cases arising from alleged false and retaliatory arrests in connection with police responses to protests on April 7, 2003, raising *Monell* and other claims similar and related to the policies and practices complained of herein such as encircling protesters, striking them with nightsticks, and using extremely tight plastic handcuffs in their arrest;

f. *MacNamara v. City of New York*, 04-cv-9216 (RJS)(JCF) (S.D.N.Y.) (including the Second Amended Class Action Complaint, Dkt. No. 200-2), *Abdell. v. City of New York*, 05-cv-8453 (RJS)(JCF) (S.D.N.Y.), *Schiller. v. City of New York*, 04-cv-7922 (RJS) (JCF) (S.D.N.Y.), *Dinler v. City of New York*, 04-cv-7921 (RJS)(JCS) (S.D.N.Y.), *Kyne v. Wolfowitz,* 06-cv-2041 (RJS)(JCF) (S.D.N.Y.) (including the Second Amended Complaint, Dkt. No. 18), and the dozens of other cases consolidated for discovery purposes in the S.D.N.Y. arising from arrests made, and policies related to, the RNC in New York City in 2004. *See, e.g., Schiller*, No. 04-cv-7922 (RJS)(JCF), 2008 WL 200021 at *2-5 (S.D.N.Y. Jan. 23, 2008) (noting the City's consent to amendment of complaints in RNC cases to

       add, *inter alia*, "constitutional challenges to the defendants' alleged practice of detaining . . . all persons in connection with the RNC . . . no matter how minor the infraction, rather than issuing summonses on the street"); *MacNamara v. City of New York,* 275 F.R.D. 125, 154 (S.D.N.Y. 2011) (certifying six "mass arrest subclasses" as well as an "Excessive Detention Class" comprised of all RNC arrestees who were processed pursuant to the RNC Mass Arrest Processing Plan and a "Conditions of Confinement Class, comprising all RNC arrestees who were handcuffed with plastic flex cuffs[.]"); *Dinler*, No. 04-cv-7921 (RJS)(JCF), 2012 WL 4513352, at *13-15 (S.D.N.Y. Sept. 30, 2012) (granting plaintiffs' motions for summary judgment on their false arrest claims related to hundreds of people mass arrested at 2004 RNC in connection with a War Resisters League march and denying defendants' cross-motion on false arrest claims);

g.    *Callaghan v. City of New York,* 07-cv-9611 (PKC)(JLC) (S.D.N.Y.) (including the Third Amended Complaint, Dkt. No. 14) (multi-plaintiff litigation challenging mass arrest policies, practices, and incidents related to post-2004 RNC Critical Mass crackdown spanning several years, pleading *Monell* claims virtually identical to the core *Monell* claims pleaded herein));

h.    *Osterhoudt v. City of New York, et al.*, No. 10-cv-3173 (RJC)(RML), 2012 WL 4481927, at *1-2, (E.D.N.Y. Sept. 27, 2012) (and the Second Amended Complaint and Demand for Jury Trial, Dkt. No. 22) (denying defendants' motion to dismiss *Monell* claims where plaintiff, who was arrested on during mass arrest on election night in November 2008, cited other lawsuits against the City for mass arrests at Critical Mass bike rides, the 2004 RNC, and the WEF including "a number of complaints alleging that the NYPD conducted mass arrests at demonstrations and in crowd control situations, plausibly alleging a widespread departmental policy of arresting political demonstrators without determining probable cause on an individual basis");

i.    Despite (then-Mayor Michael Bloomberg's recognition that, "the majority of the [OWS] protesters have been peaceful and responsible,"[1] there were more than ninety civil rights actions filed in the S.D.N.Y. arising from NYPD OWS arrests and related polices, including, but not limited to, the cases listed in *Marisa Holmes v. City of New York, et al.*, 14-cv-5253 (LTS) (S.D.N.Y.) (Dkt. No. 13 ¶ 89) (listing by caption and docket numbers of many OWS-related cases as of March 13, 2015). Some of those cases resulted in judgments and many resulted in substantial settlements prior to trial including *Gerskovich v. Iocco,* 15-cv-7280 (S.D.N.Y. Berman, J.) that settled for $256,000 prior to trial, and which

---

[1] Michael Bloomberg, *Michael Bloomberg's Statement on the Zuccotti Park Clearance*, The Guardian (Nov. 15, 2011, 8:39 EST), http://www.guardian.co.uk/world/2011/nov/15/michael-bloomberg-statement-zuccotti-park.

        complaint had a similar failure to train Monell claim that had been sustained through Defense Rule 12 and Rule 56 motions;

j.     In *Peat v. City of New York,* No. 12-cv-08230 (S.D.N.Y.), fifteen OWS plaintiffs arrested on January 1, 2012, on the sidewalk in the East Village settled a case with Defendant City of New York for $598,000. The settled complaint alleged that plaintiffs were peacefully and lawfully protesting when executive members of the NYPD blocked their path on the sidewalk,[2] encircled them on three sides and a building line on the fourth side. The NYPD made dispersal announcements without providing sufficient time or a path of egress as members of the scooter task force blocked the protesters path of egress;

k.     Other OWS-related cases have continued through discovery and are awaiting trial, including two cases involving failure to train claims similar to those at issue in this case, which are currently scheduled for trial: *Packard* v. *City of New York* 15-cv-7130 (S.D.N.Y.) (AT) and *Case v. City of New York,* 14-cv-9148 (S.D.N.Y.) (AT)*;*

l.     The Plaintiffs in *Case, et al. v. City of New York, et al.*, 14-cv-9148 (AT)(BCM) were arrested at an Occupy Wall Street protest and subjected to certain NYPD large-scale arrest processing rather than being released on the street with a summons as a result, including *Monell* claims with much in common with many of those raised herein. *See Case v City of NY*, 233 F. Supp. 3d 372 (SDNY 2017); 408 F.Supp.3d 313 (SDNY 2019);

m.     The Union Square litigations related to the mass arrests that occurred in and around Union Square Park on September 24, 2011, alleged similar NYPD misconduct that is alleged in this pleading, including, failure to provide reasonable dispersal orders and opportunity to disperse, unnecessary and excessive force used on protesters and overall efforts of the NYPD to deter and demoralize protesters. Nearly all of these cases include multiple plaintiffs and were all settled by the City of New York, including *Clarke v NYC*, 13-cv-(RWS); *Crisp v. NYC,* 12-cv-5482(RWS); *Dedrick v. NYC*, 12-cv-7165(RWS); *Dierken v. NYC*, 12-cv-7462(RWS); *Elliot v. NYC*, 12-cv-992(RWS); and *Hanlin v. NYC*, 12-cv-5844(RWS);

n.     Those cases OWS related cases referenced herein, *Gerskovich, Packard, Case, Peat,* the Union Square Litigations, as well *as* several other OWS-related cases, included failure to train *Monell* claims concerning protest activity that are similar to the *Monell* claims in this litigation;

---

[2] In March and April 2012, NYCLU issued Free Speech Threat Assessments detailing the NYPD's restriction on protester activity and engaging in a manner to obstruct protester's ability to engage in First Amendment activity and identified how executive "supervising officers, at random and without warning, pointed to protesters they wanted arrested for disorderly conduct, unreasonable noise, resisting arrest and obstructing governmental administration." https://www.nyclu.org/en/nyc-free-speech-threat-assessment.

  o. The incidents discussed in the 2003 NYCLU special report created by the NYCLU in the wake of the February 15, 2003 antiwar demonstration, titled *Arresting Protest*, published April 2003, *available at* https://www.nyclu.org/sites/default/files/publications/nyclu_pub_arresting_protest.pdf;

  p. The incidents discussed in the 2005 NYCLU special report created by the NYCLU in the wake of protests at the RNC, titled *Rights and Wrongs at the RNC*, published in 2005, *available at* https://www.nyclu.org/sites/default/files/publications/nyclu_pub_rights_wrongs_rnc.pdf;

  q. The incidents discussed in the research compiled by The Global Justice Clinic at the New York University School of Law and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice at Fordham Law School in their publication titled *Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street*, published July 25, 2015, *available at* http://hrp.law.harvard.edu/wp-content/uploads/2013/06/suppressing-protest-2.pdf;

  r. *Edrei v. City of New York*, 16-cv-01652 (JMF)(BCM) (challenging NYPD uses of Long Range Acoustic Device ("LRAD") against perceived "group" for crowd control purposes, including *Monell* allegations challenging many of the same policies and practices herein, *see, e.g.,* First Amended Complaint at Paragraph 415);

  s. *In re: New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (CM)(GWG) (multiple consolidated cases, including class and injunctive actions and a *parens patriae* suit by the State, challenging, among other things, the NYPD's deliberately brutal, aggressive, and unlawful treatment of protesters based on their messages, as well as the policies and training deficiencies that led to the routine use of excessive force against people based on their message);

  93. As set out above, and upon information and belief, Defendants targeted Plaintiff for particularly brutal treatment and arrest because of Plaintiff's perceived criticism of the homeless sweeps the police were engaged in.

  94. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

## SIXTH CLAIM FOR RELIEF

**N.Y.C. Admin. C. §§8-801** *et seq.,* **"Qualified Immunity Repeal" Claims Against All Defendants**

95. Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

96. The New York City Administrative Code §8-803 provides as follows in relevant part:

> a. "A covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable to the person aggrieved for legal or equitable relief or any other appropriate relief."
>
> b. "The employer of a covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable, based upon the conduct of such covered individual, to the person aggrieved for legal or equitable relief or any other appropriate relief."
>
> c. "A person aggrieved may make a claim pursuant to subdivision a of this section in a civil action in any court of competent jurisdiction by filing a complaint setting forth facts pertaining to the deprivation of any right created, granted or protected by section 8-802 and requesting such relief as such person aggrieved considers necessary to insure the full enjoyment of such right."

97. Given the fact that a "covered individual" under §8-801 means "[any] employee of the police department," the Individual Defendants are all considered covered individuals. §8-801.

98. Plaintiff is a "person aggrieved" because he was (at minimum) "allegedly subjected to, or allegedly caused to be subjected to, the deprivation of a right created, granted, or protected by §8-802 by a covered individual even if the only injury allegedly suffered by such natural person is the deprivation of such right." *Id.*

99. Defendant City is liable as an employer, as set out above.

100. Defendants' uses of force against Plaintiff were unjustified, unlawful, and objectively unreasonable, considering the facts and circumstances before the Defendants.

101. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff's bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

102. Further, it is not a defense to liability under §§8-801 *et seq.* that a covered individual has qualified immunity or any other substantially equivalent immunity.

103. Thus, the Court should award both compensatory and punitive damages against all parties (including the City), an order restraining future conduct, and all reasonable fees and court expenses pursuant to §8-805 of the Administrative Code.

## JURY DEMAND

104. Plaintiff requests a jury trial on all issues capable of being tried and determined by a jury pursuant to Fed. R. Civ. P. 38.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the City of New York as follows:

i. Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii. Actual damages in an amount to be determined at trial against the City of New York, and punitive damages pursuant to N.Y.C. Admin. C. § 8-805(1)(ii);

iii. An appropriate restraining order pursuant to N.Y.C. Admin. C. § 8-805(3)

iv. Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. § 1988, N.Y.C. Admin. L. § 8-805(2), and New York common law; and

v. Such other relief as the Court deems just and proper.

Dated: Queens, New York
February 20, 2025

**COHEN&GREEN P.L.L.C.**

By:\_\_\_\_\_/s/_____
J. Remy Green
Elena L. Cohen

1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888-9480
elena@femmelaw.com
remy@femmelaw.com

**GIDEON ORION OLIVER**

_____
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

*Attorneys for Plaintiff*