![Gideon Orion Oliver — ATTORNEY AT LAW — He/him/his]

277 Broadway, Suite 1501
New York, NY 10007

1825 Foster Avenue, Suite 1K
Brooklyn, NY 11230

Gideon@GideonLaw.com*
GideonLaw.com

**Office**: (718) 783-3682
**Signal**: (646) 263-3495
**Fax**: (646) 349-2914*

*Not for service*

April 25, 2025

**BY ECF**
Hon. Lewis J. Liman
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> The case is removed from the 1983 Plan. Defendants have until May 20, 2025 to respond to the Complaint. An initial pretrial conference is set for May 29, 2025 at 10 a.m. Parties are directed to dial into the Court's teleconference line at (646) 453-4442 and enter conference ID# 358639322.
> April 29, 2025
> SO ORDERED.
> LEWIS J. LIMAN
> United States District Judge

Re:    <u>Derwin Gonzalez v. City of New York, et al.</u>, 25 CV 1452 (LJL)

Your Honor:

I am co-counsel for Plaintiff Derwin Gonzalez. The parties hereby respectfully submit this joint letter in compliance with the Court's April 18, 2025 Order (ECF 12).

**Plaintiff's Position**

In ECF 11, Defendant City of New York opposed an application that Plaintiff had discussed, but not yet made, to remove this case from the "1983 Plan" codified in Local Civil Rule 83.10, as premature, and on other grounds. On Plaintiff's view, it was Defendant City's opposition was premature, as Plaintiff had not made an application to the Court at that time – only signaled that Plaintiff intended to. That said, having met and conferred with opposing counsel regarding whether the case should remain in the Plan twice since March 26, 2025, Plaintiff respectfully submits that the Court should remove the case from the 1983 Plan, and now asks the Court to do so. Plaintiff consents to the Court's granting Defendants additional time to answer.

By way of relevant background, members of the New York City Police Department ("NYPD") violently attacked and arrested Mr. Gonzalez on November 22, 2023, as he was present on the sidewalk verbally protesting police actions related to unhoused people, using a Taser on Plaintiff, throwing him to the ground, kicking him while he was down, applying excessively tight handcuffs to Plaintiff, and otherwise injuring him. *See* Complaint (ECF 1) ¶¶ 21-38. A number of NYPD members then provided false evidence to prosecutors, and swore out a false complaint against, Mr. Gonazlez, as a result of which he faced felony charges for several months. *See id.* ¶¶ 39-47. After police Tased Mr. Gonzalez, a prong or prongs from the Taser remained lodged in his body, and he was otherwise injured. NYPD members at the 9th Precinct therefore summoned Emergency Medical Technicians (EMT's) to the Precinct, where they provided Mr. Gonzalez with some medical care. (Mr. Gonzalez later received additional medical treatment after his release from police custody).

As part of counsels' pre-suit investigation, Plaintiff's counsel pursued a request pursuant to New York Public Officers Law Article 6, §§ 84-90 (the "FOIL"), for body-worn camera ("BWC") footage, reports related to uses of force and medical treatment, and all records sent by the NYPD to prosecutors, related to the November 22, 2023 incident. After litigation, Plaintiff's counsel obtained all of those documents, including all of the relevant BWC and other NYPD records generated as a result of Plaintiff's assault and arrest. *See Gideon Orion Oliver v. New York City Police Department*, NY County Supreme Court Index No. 159205/2024, NYSCEF Doc. No. 14. The parties therefore have access to all of the documents that the NYPD created related to the incident and forwarded to prosecutors.

Also as part of counsel's pre-suit investigation, Plaintiff's counsel attempted to obtain records regarding the medical care Mr. Gonzalez received from EMT's while at the 9th Precinct on November 22, 2023 – without success. Among other efforts, counsel first from the New York City Fire Department ("FDNY"). On April 9, 2024, FDNY denied the request, stating that Mr. Gonzalez had been "transported by a PRIVATELY owned ambulance." On April 10, 2024, the FDNY Public Records Unit informed counsel that the EMT's who treated Plaintiff had been dispatched from Mount Sinai Beth Israel. However, Mount Sinai Beth Israel rejected Plaintiff's request for records, directing Plaintiff to send the request to Mount Sinai Queens, as "they process their own records." Mount Sinai Beth Israel subsequently informed counsel that counsel should send the request to Mount Sinai West Roosevelt. When we did so, we received yet another rejection letter that states "NO RECORD FOUND PATIENT NOT SEEN AT THIS LOCATION." Therefore, it will take formal discovery (including issuing subpoenas) to obtain the relevant records.

Additionally, prior to filing suit, Plaintiff engaged in the Comptroller's pre-suit settlement process by sending the Comptroller's Office a confidential demand letter and supporting documentation. After scheduling a pre-suit settlement conference, however, the Comptroller's Office abruptly cancelled, taking the position that the City would not discuss potential pre-suit settlement at all.

Plaintiff filed this case a few days later, on February 20, 2025. On February 25, 2025, the Court designated the case for participation in the 1983 Plan. On March 20, 2025, the Law Department appeared on behalf of Defendant City, and made an application to the Court asking that the Court adjust the answer deadlines on the docket (which had been automatically calculated before the Court had designated the case as participating in the 1983 Plan) to conform with the deadlines in the 1983 Plan. ECF 9. On March 21, 2025, Plaintiff provided the Law Department with the unsealing release as well as a release covering medical records for the provider Plaintiff saw regarding his injuries after his release from police custody, as required by the 1983 Plan.

Plaintiff wrote the Court in response to Defendant City's application at ECF 9 on March 26, 2025, stating, among other things, that Plaintiff intended to meet and confer with counsel for Defendant City regarding a potential application to remove the case from the 1983 Plan. ECF 10. The parties had a telephonic meet and confer a few days later, and Plaintiff agreed to provide defense counsel with various releases, including a release running to FDNY and several release running to Mt. Sinai, to assist defense counsel in its efforts to

identify the EMT's who treated Plaintiff on the date of the incident at the 9th Precinct. Plaintiff has provided all of those releases.

The parties met and conferred a second time after the Court issued its April 18, 2025 Order. However, Plaintiff has no information about the status of defense counsel's investigations to identify the EMT's who treated Plaintiff. If the NYPD members who were on duty at the 9th Precinct on the date of Plaintiff's arrest followed NYPD protocol, NYPD records, such as the Command Log from the 9th Precinct, will identify those EMT's. However, that information is uniquely in Defendants' control, and Defendant City has not yet provided it.

Against that backdrop, Plaintiff respectfully submits that the Court should remove this case from the 1983 Plan. "One of [the 1983 Plan's] core goals is to encourage a fast and efficient discovery process." *Elliot v. City of N.Y.*, 2020 U.S. Dist. LEXIS 216028, at *4 (S.D.N.Y. Nov. 18, 2020). To that end, the 1983 Plan requires the early exchange of several types of documents "considered most helpful for an early disposition" of cases in the applicable categories, while all other discovery is stayed. Here, Plaintiff has already received the discovery that the Plan requires the parties to exchange as a result of Plaintiff's FOIL request, and the City declined to engaged in pre-suit settlement negotiations. Accordingly, the 1983 Plan would require the re-disclosure of documents that would serve no purpose here, while staying discovery that would actually help Plaintiff advance Plaintiff's claims.

Plaintiff has "a legitimate interest in the expeditious resolution of [their] civil case." *Jackson v. Johnson*, 985 F. Supp. 422, 425 (SDNY 1997). Leaving this case in the 1983 Plan, when the City has declined to engage in pre-suit settlement negotiations, and where the parties already have access to all of the relevant discovery that would be exchanged through the Plan, and where formal discovery will be necessary to obtain documents from third-parties, would frustrate that interest and prejudice Plaintiff's rights to pursue his claims in a timely manner.

Finally, if the Court removes the case from the Plan, nothing prohibits the parties from engaging in settlement negotiations. Indeed, Plaintiff is open to engaging with Defendants about potential settlement, has already made a demand, and will of course participate in any settlement conference or mediation process ordered.

Based on the foregoing, Plaintiff submits that the 1983 Plan's stated benefits will not be realized in this case, and the Court should remove the case from the Plan so that the parties can proceed with discovery.

**Defendants' Position**

At the outset, the parties agree that the deadline for defendants to respond to the Complaint is fairly calculated from the date the plaintiff provided the unsealing and medical releases to defendant City, even though there was a delay in obtaining a medical release for EMS records from the plaintiff. Releases for those EMS records have since been provided by plaintiff and they are currently being processed for relevant records. As such, the parties are

3

in agreement that defendants City of New York Zachary Zinaman, Brenden Rogers, and Utsav Desai's deadline to respond to the Complaint should be calculated from the date plaintiff provided the substantially-compliant Plan releases, namely from March 21, 2025. Accordingly, per the Plan, defendant City, Zachary Zinaman, Brenden Rogers, and Utsav Desai's responses to the Complaint are due 60 days thereafter, on May 20, 2025. See Loc. Civ. R. 83.10(3).

Regarding the plaintiff's request for this matter to be removed from the Plan, defendant City respectfully opposes. As noted in the undersigned's April 17, 2025 letter, plaintiff has provided no persuasive basis for removing this case from the Plan. This is precisely the type of action that belongs in the Plan. This action was commenced by filing of the complaint (ECF No. 1) on February 20, 2025, alleging principally claims for false arrest and excessive force pursuant to 42 U.S.C. § 1983. As explained in the undersigned's April 17, 2025 letter, the Plan provides specific efficiencies and encourages early resolution of cases that allege the type of claims at issue in this case. See, e.g., Elliot v. City of New York, No. 20 Civ. 702 (NRB), 2020 U.S. Dist. LEXIS 216028, at *3-4 (S.D.N.Y. Nov. 18, 2020) (noting that the Plan is designed to "efficiently manage and to 'reduce the time to disposition in the typical § 1983 cases brought against the NYPD and its officers'" and "[o]ne of its core goals is to encourage a fast and efficient discovery process"). Even if plaintiff is already in possession of substantial paper discovery, the Plan's provisions provide for staggered and defined discovery in order to provide the parties the opportunity to assess settlement options, and to limit the accrual of unnecessary litigation expenses which can often be an impediment to resolving Section 1983 matters, which travel with claims for fees and costs under Section 1988. See Elliot v. City of New York, No. 20 Civ. 702 (NRB), ECF No. 24 (S.D.N.Y. Oct. 2, 2020) (denying plaintiff's application to remove case from the Plan, in part, due to plaintiff's presumed futility of mediation).

Plaintiff contends that because he is in possession of certain documents and materials listed in Exhibit C of Local Civil Rule 83.10, which describes the parties' initial disclosure obligations, he is in possession of all of the discovery that the Plan requires the parties to exchange and therefore the discovery required by the Plan would not be helpful for plaintiff to advance his claims. However, the Plan also requires that the parties exchange limited discovery, which includes, *inter alia*, the district attorney's office file and criminal court file, both of which are likely relevant to plaintiff's malicious prosecution and denial of a fair trial claims in this case. Moreover, since plaintiff is already in possession of certain materials relevant to his claims, this case is ideally positioned for early evaluation for settlement, as contemplated by the Plan.

Finally, plaintiff provided defendant City with a document that appears to be a demand that he submitted to the Office of the New York City Comptroller pre-litigation. To be clear, plaintiff filed the instant matter after any pre-litigation settlement discussions plaintiff may have had with the Comptroller's Office and has made no formal demand to resolve the instant matter to date, or confirmed that his demand is the same as that made to the Comptroller's Office.

In light of the foregoing, defendant City respectfully submits that this matter should remain in the Plan as the structure provided by the Plan will aid in an efficient discovery

process and provide the parties with an opportunity to assess the potential early resolution of this matter.

**Conclusion**

The parties thank Your Honor for the Court's attention to this matter.

Respectfully submitted,

Gideon Orion Oliver