**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- X

DERWIN GONZALEZ,

                Plaintiff,

    - against -

THE CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT ("NYPD") OFFICER
ZACHARY ZINAMAN (SHIELD NO. 16519);
NYPD OFFICER BRENDEN ROGERS (SHIELD
NO. 2146); NYPD OFFICER UTSAV DESAI;
NYPD SERGEANT GUSTAVO PAUL (NYPD
TAX REGISTRATION NO. 956155); and NYPD
OFFICER EUGENE ADELEYE (SHIELD NO.
1364),

                Defendants.

------------------------------------------------------------------- X

**FIRST AMENDED COMPLAINT**

**25-cv-1452 (LJL)(OTW)**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        Plaintiff DERWIN GONZALEZ (he/him), by and through his attorneys, Cohen&Green

P.L.L.C. and Gideon Orion Oliver, hereby complains of Defendants as follows:

<u>**PARTIES**</u>

        1.      At all times mentioned herein, Plaintiff Derwin Gonzalez is and has been an adult

resident of Queens County in the City, and State of New York.

        2.      At all relevant times mentioned herein, Defendant, City of New York ("New York

City"), was and is a municipal corporation duly organized and existing under and by the virtue of

the laws of the State of New York and acts by and through its agencies, employees, and agents,

including (but not limited to) the New York City Police Department ("NYPD") and their

employees.

3.    Defendant NYPD OFFICER ZACHARY ZINAMAN (SHIELD NO. 16519) was at all times relevant to this Complaint a member of the NYPD assigned to the 9th Precinct. He is sued in his official and individual capacity.

4.    Defendant NYPD OFFICER BRENDEN ROGERS (SHIELD NO. 2146) was at all times relevant to this Complaint a member of the NYPD assigned to the 9th Precinct. He is sued in his official and individual capacity.

5.    Defendant NYPD OFFICER USTAV DESAI was at all times relevant to this Complaint a member of the NYPD assigned to the 9th Precinct.  He is sued in his official and individual capacity.

6.    Defendant NYPD SERGEANT GUSTAVO PAUL (NYPD Tax Registration No. 956155) was at all times relevant to this Complaint a member of the NYPD assigned to the 9th Precinct.  He is sued in his official and individual capacity.

7.    Defendant NYPD OFFICER EUGENE ADELEYE (NYPD Tax Resgistration No. 961486) was at all times relevant to this Complaint a member of the NYPD assigned to the 9th Precinct.  He is sued in his official and individual capacity.

8.    At all times hereinafter mentioned, Defendants Zinaman, Rogers, Desai, Paul, and Adeleye (the "Individual Defendants") were employed by the City of New York as members of the NYPD.

9.    At all times hereinafter mentioned, the Individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

10.     Each and all of the acts and omissions of the Defendants alleged herein occurred while said Individual Defendants were acting within the scope of their employment by the Defendant City.

11.     The Individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

12.     Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

13.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

14.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no point did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

15.     Each Individual Defendant is sued in their individual and official capacities.

**JURISDICTION, VENUE, AND GENERAL MUNICIPAL LAW COMPLIANCE**

16.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

17.     The federal civil rights claims in this action are brought pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

18.     An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

19.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) as at least one of the Defendants resides in this district and a substantial part of the events and/or omissions were committed in this district.

20.     As to Plaintiff's claims under New York law, Plaintiff timely served a Notice of Claim on the municipal Defendant and complied with all conditions precedent to commencing an action under state law.

21.     Plaintiff has initiated this action within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York State Law

## **STATEMENT OF FACTS**

22.     On November 22, 2023, at or around 10:45 a.m., police were conducting a "sweep" to clear a location of unhoused residents at or near the intersection of 1st Avenue and 9th Street, in the County, City, and State of New York.

23.     Mr. Gonzalez was present to protest police activity, and to assemble and associate with unhoused people and others in support of unhoused people, located on the sidewalk.

24.     As part of that sweep, NYPD members made arrests, and threatened to make arrests, including, but not limited to, of unhoused people, supporters, and bystanders.

25.     Several of the Individual Defendants participated in that sweep, and, upon information and belief, Defendant Rogers made and threatened to make arrests at that location.

26.     Shortly thereafter, after the conclusion of the sweep, Mr. Gonzalez was walking to the stationhouse of the 9th NYPD precinct by walking at or around East 5th Street between 1st and 2nd Avenues, in the County, City, and State of New York, when he came upon Defendants Zinaman, Rogers, and Adeleye standing outside a building.

27.     Unbeknownst to Mr. Gonzalez, those Individual Defendants were apparently responding to a call related to a potential burglary inside that building.

28.     At that time, Defendants Paul and Desai were inside the building – however, as seen below, they emerged just before, or at the latest doing the course of, Mr. Gonzalez's arrest.

29.     Mr. Gonzalez and another individual approached Defendants Zinaman, Rogers, and Adeleye as they stood outside the building and verbally protested the NYPD's actions in conducting the sweep.

30.     For example, the other individual – who was recording the NYPD members on his cell phone – said, "What's up, pig? You tried to arrest me earlier" – referring to one of Defendants Zinaman, Rogers, or Adeleye.

31.     Meanwhile, walking up to Defendant Zinaman, Mr. Gonzalez said: "Why don't you clowns stop harassing homeless people? What is your fucking problem?"

32.     Defendant Zinaman then suddenly, and without warning, forcefully pushed Mr. Gonzalez in the chest.

33.     As Defendant Zinaman pushed Mr. Gonzalez in the chest, he said, "Back up" – without giving him an opportunity to comply before immediately escalating to physically pushing Mr. Gonzalez in the chest.

34.    In response to Defendant Zinaman's suddenly pushing him in the chest, Mr. Gonzalez briefly guided Defendant Zinaman's hand off his chest, touching Defendant Zinaman for an instant and saying: "Don't' fucking touch me."

35.    At the same time, Mr. Gonzalez complied with Defendant Zinaman's direction to "back up" right away by backing up, away from Defendant Zinaman and toward the street.

36.    While Mr. Gonzalez was backing away from Defendant Zinaman, Defendant Rogers rushed off the stairs leading into the building, where had been standing, charged at Mr. Gonzalez, and used both of his hands - and his body weight - to push Mr. Gonzalez into the middle of the street.

37.    Just as, or immediately after, saying, "Back up," and as Mr. Gonzalez was complying by backing up, Defendant Zinaman drew his TASER, pointing it at Mr. Gonzalez's chest, advanced threateningly at Mr. Gonzalez, and saying: "Put your hands behind your back, put your hands behind your back."

38.    Defendant Zinaman, who continued to charge at Mr. Gonzalez as Defendant Rogers pushed Mr. Gonzalez into the middle of the roadway, then said: "Go ahead, go ahead" – signaling to Defendant Rogers.

39.    Defendant Rogers and Zinaman then both forcefully spun Mr. Gonzalez around so that Mr. Gonzalez's back was facing to Defendant Zinaman, and, as Defendant Zinaman said, "Taser, Taser, Taser!," pointing the TASER at Mr. Gonzalez's back, Defendant Zinaman shot the TASER at Mr. Gonzalez's back.

40.    Defendant Zinaman shot the two TASER electrodes directly into Mr. Gonzalez's back from an arm's length away, which penetrated the skin on Mr. Gonzalez's back, and then

deployed the TASER's electrical pulse - designed to cause pain to, and incapacitate, a person – through the prongs into Mr. Gonzalez's back.

41.     Defendants Zinaman and Rogers next forcefully threw Mr. Gonzalez to the ground, although he had been immediately compliant with Defendant Zinaman's sudden direction to "move back," and as Defendant Zinaman was shocking Mr. Gonzalez with his TASER.

42.     Defendant Zinaman kicked Mr. Gonzalez while he was down on the ground and incapacitated and subdued by Defendants Zinaman and Rogers.

43.     As Defenants Zinaman and Rogers had Mr. Gonzalez pinned down on the ground, Defendant Paul – their supervising Sergeant, who had by then arrived from inside the building – kneeled down on Mr. Gonzalez, physically participating in arresting Mr. Gonzalez.

44.     Next, as Defendants Zinaman, Rogers, and Paul pinned Mr. Gonzalez down on the ground, Defendant Desai applied metal handcuffs to Mr. Gonzalez's wrists with extreme tightness.

45.     Mr. Gonzalez complained about the excessive tightness of the handcuffs.

46.     The members of the NYPD to whom Mr. Gonzalez complained did not take any steps to alleviate the excessive tightness of the handcuffs until after Mr. Gonzalez was forced to endure the excessively tight handcuffs for an extended period of time, including while he was inside a holding cell at the 9th Precinct awaiting medical care related to the above-described uses of force.

47.     Several of the Individual Defendants then stood Mr. Gonzalez up and walked him from to the NYPD's 9th Precinct.

48.     Between the time Mr. Gonzalez began to walk up to Defendant Zinaman and the time Defendants Zinaman and Rogers took Mr. Gonzalez down to the ground, Defendant Adeleye was standing within a few feet of Defendants Zinaman and Rogers, and Mr. Gonzalez.

49.     Although Defendants Adeleye, Paul, and Desai had a meaningful opportunity to intervene to prevent some or all of the above uses of force against Mr. Gonzalez, as well as his arrest and subsequent criminal prosecution, each of them failed to do so.

50.     While inside the 9th Precinct, Defendant Rogers used a knife to cut off the string of Mr. Gonzalez's hoodie.

51.     Although Mr. Gonzalez said he could simply take off the hoodie altogether if his handcuffs were removed momentarily, Defendant Rogers refused his offer and instead insisted on using a folding knife to cut the string off, while grabbing Mr. Gonzalez roughly by the chest.

52.     Officer Rogers wielding a knife so close to Mr. Gonzalez's body put Mr. Gonzalez in fear for his safety.

53.     Upon information and belief, members of the NYPD created official NYPD paperwork relying on fabricated evidence, including about purported observations of Plaintiff's alleged pre-arrest conduct, and/or forwarded such fabricated evidence to prosecutors and/or initiated charges against Plaintiff, relying on fabricated evidence and without probable cause.

54.     For example, Defendant Desai swore out a criminal complaint against Plaintiff based on allegations about Mr. Gonzalez's alleged conduct toward Defendants Zinaman and Rogers.

55.     Additionally, Defendants Zinaman and Rogers each created official NYPD records – including, but not limited to, AIDED Reports – purporting to document injuries they each claimed Mr. Gonzalez had caused, which contained false information about their purported physical injuries and the circumstances that led to them.

56.     Past that, Defendant Paul created an official NYPD record related to Defendants Zinaman's and Rogers' uses of force against Mr. Gonzalez - a Threat, Resistance, and Injury

Report, or "TRI Report" – which contained false information about Defendants Zinaman's and Rogers' purported physical injuries and the circumstances that led to them.

57.    The false statements and evidence fabricated by those Individual Defendants and memorialized in NYPD records that they forwarded to prosecutors include, among other things, false statements that Mr. Gonzalez: disobeyed police orders, struck and attempted to strike police officers, resisted arrest, interfered with the officers' perfomance of official police duties, and physically injured both Defendant Zinaman and Defendant Rogers.

58.    At approximately 6 p.m. on November 23, 2023, Mr. Gonzalez was finally brought before a judge in New York City Criminal Court and arraigned on felony and misdemeanor assault charges, among others, based on allegations sworn out by Defendant Desai about Mr. Gonzalez's alleged conduct toward Defendants Zinaman and Rogers.

59.    The Court released Mr. Gonzalez subject to the orders and processes of the Court and under Court supervision which required him to make in-person and phone check-ins during the pendency of the case.

60.    On March 19, 2024, the felony charges in the criminal proceeding against Mr. Gonzalez were reduced and/or dismissed on grounds consistent with Mr. Gonzalez's innocence, leaving only the misdemeanor charges in the criminal proceeding.

61.    On June 5, 2024, the remaining charges, and the entire criminal proceeding, were dismissed on speedy trial grounds, consistent with Mr. Gonzalez's innocence.

### FIRST CLAIM FOR RELIEF

***Excessive Force***
***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

**Against the Individual Defendants**

62.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

63.     Defendants Zimanan's, Rogers', Paul's, and Desai's uses of force against Mr. Gonzalez were unjustified and objectively unreasonable, considering the facts and circumstances that confronted Defendants.

64.     Additionally, each of the Individual Defendants had meaningful opportunities to intervene to prevent some or all of the uses of force against Mr. Gonzalez, and they failed to do so.

65.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

66.     Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### SECOND CLAIM FOR RELIEF

*False Arrest*
*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the*
*Fourth and Fourteenth Amendments to the United States Constitution*

**Against the Individual Defendants**

67.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

68.     Defendants did not have probable cause to seize, detain, or arrest Plaintiff.

69.     Defendants seized Plaintiff without a written judicial warrant authorizing them to do so.

70.     Defendants' seizure of Plaintiff was without privilege or lawful justification.

71.     Plaintiff did not consent and was conscious of the confinement by Defendants.

72.     Each of the Individual Defendants had meaningful opportunities to intervene to prevent Mr. Gonzalez's arrest and/or detention, and they failed to do so.

73.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

74.     Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### **THIRD CLAIM FOR RELIEF**

**For Violations of Plaintiff's First Amendment Rights, Including Under Retaliation and Time/Place/Manner Theories of Liability**
***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution***

**Against the Individual Defendants**

75.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

76.     Defendants infringed on Plaintiff's rights to engage in speech and/or conduct protected by the First Amendment.

77.     Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

78.     Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

79.     Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

80.     Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims with malice.

81.     Defendants imposed restrictions on Plaintiff's protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in subjecting Plaintiff to excessive force, false arrest, malicious and false prosecution, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

82.     In addition to being retaliatory, the restrictions Plaintiff complains of herein that Defendants imposed on Plaintiff's First Amendment rights were impermissible restrictions on those rights in that they:

      a.  Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

      b.  Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiff's protected activity; and/or

      c.  Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's ability to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

      d.  Amounted to the imposition of strict liability on Plaintiff for engaging in protected First Amendment activity.

83.     Each of the Individual Defendants had meaningful opportunities to intervene to prevent some or all of the violations of Mr. Gonzalez's First Amendment rights, and they failed to do so.

84.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

85.     Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FOURTH CLAIM FOR RELIEF

**Deprivation of Fair Trial Rights**
***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Protected Under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution***

**Against Defendants Zinaman, Rogers, Desai, and Paul**

86.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

87.     Defendants Zinaman, Rogers, Desai, and Paul fabricated evidence of a material nature likely to influence a jury's decision and intentionally forwarded that evidence to the Court, as a result of which Plaintiff suffered deprivations of liberty and/or property.

88.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff's bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

89.     Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FIFTH CLAIM FOR RELIEF

**Malicious Prosecution**

13

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Protected Under the Fourth and Fourteenth Amendments to the United States Constitution*

**Against Defendants Zinaman, Rogers, Desai, and Paul**

90.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

91.     Defendants <u>Zinaman, Rogers, Desai, and Paul</u> misrepresented and falsified evidence to the prosecutor and/or failed to make a full statement of the relevant evidence – including potentially exculpatory evidence - to the prosecutor.

92.     Defendants <u>Zinaman, Rogers, Desai, and Paul</u> were directly and actively involved in the initiation or prosecution of criminal proceedings against Plaintiff, including by supplying and creating false information to be included in NYPD paperwork that was included in NYPD paperwork, providing falsely sworn information in accusatory instruments, and/or providing false information to the prosecutor.

93.     Defendants <u>Zinaman, Rogers, Desai, and Paul</u> lacked probable cause to initiate and continue criminal proceedings against Plaintiff.

94.     Defendants <u>Zinaman, Rogers, Desai, and Paul</u> acted with malice in initiating criminal proceedings against Plaintiff.

95.     Notwithstanding those Defendants' misconduct, the criminal proceedings against Plaintiff were favorably terminated on the merits.

96.     At all times during the pendency of the criminal proceedings against Plaintiff, Plaintiff remained subject to the orders and processes of the Court.

97.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and

expenses; and/or otherwise damaged and injured Plaintiff.

98.     Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless,

and was of such a nature that punitive damages should be imposed against them.

### SIXTH CLAIM FOR RELIEF

**Municipal Liability**
***Pursuant to 42 U.S.C. 1983 and <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978)
for Defendants' Violations of Plaintiff's Federal Constitutional Rights***

**Against the City of New York**

99.     Plaintiff incorporates by reference the allegations set forth in all preceding and

following paragraphs as if fully set forth herein.

100.    The facts pleaded above describe the policies, practices, and customs Defendants

subjected Plaintiff to, including, but not limited to: uses of excessive force, false arrest,

unreasonable restrictions on Plaintiff's First Amendment-protected conduct, violations of

Plaintiff's fair trial rights, and false and malicious prosecution.

101.    All of the wrongful acts or omissions complained of herein were carried out by the

Individual Defendants pursuant to: (a) formal policies, rules, and procedures of Defendant City;

(b) actions and decisions by Defendant City's policymaking agents; (c) customs, practices, and

usage of the City that are so widespread and pervasive as to constitute *de facto* policies accepted,

encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City; (d) Defendant

City's deliberate indifference to Plaintiff's rights secured by the First, Fourth, Fifth, Sixth, and/or

Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and

the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers,

despite full knowledge of the officers' wrongful acts, as described herein.

102.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

### SEVENTH CLAIM FOR RELIEF

***Violations of New York State Law***
***Pursuant to the New York State Constitution and New York State Law***

**Against All Defendants**

103.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

***Respondeat Superior*** **Liability**

104.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

**Violations of the New York State Constitution**

105.    Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution.

106.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiffs' rights under those sections.

**Assault**

107.    Defendants committed assault within the meaning of New York common law against Plaintiff by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

**Battery**

108.    Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

**Conversion**

109.    Defendants committed conversion by intentionally taking possession of and/or interfering with Plaintiff's personal property in derogation of Plaintiff's property rights.

**Negligent Training and Supervision**

110.    Upon information and belief, Defendant City negligently trained and supervised the police officials described above.

**False Imprisonment and Unreasonable Detention**

111.    By the actions described above, the police officials described above did falsely arrest and/or imprison Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiff was conscious of the confinement and it was without Plaintiff's consent.

**Malicious Prosecution**

112.    Defendants commenced criminal proceedings against Plaintiff maliciously and without probable cause.

113.    All charges were terminated in Plaintiff's favor.

114.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

115.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## EIGHTH CLAIM FOR RELIEF

### *New York City Administrative Code §§8-801 et seq., Claims*

### **Against All Defendants**

116.    Plaintiff incorporates by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

117.    By falsely arresting, using excessive force on, and maliciously prosecuting Plaintiff, Defendants violated Plaintiff's rights within the meaning of New York City Administrative Code §§8-801, *et seq.*

118.    New York City Administrative Code §8-803 provides as follows, in relevant part:

a.    "A covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable to the person aggrieved for legal or equitable relief or any other appropriate relief."

b.    "The employer of a covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable, based upon the conduct of such covered individual, to the person aggrieved for legal or equitable relief or any other appropriate relief."

c.    "A person aggrieved may make a claim pursuant to subdivision a of this section in a civil action in any court of competent jurisdiction by filing a complaint setting forth facts pertaining to the deprivation of any right created, granted or protected by section 8-802 and requesting such relief as such person aggrieved considers necessary to insure the full enjoyment of such right."

119.    Given the fact that a "covered individual" under §8-801 means "[any] employee of the police department," the Individual Defendants are all considered covered individuals. §8-801.

120.    Plaintiff is a "person aggrieved" because he was (at minimum) "allegedly subjected to, or allegedly caused to be subjected to, the deprivation of a right created, granted, or protected by §8-802 by a covered individual even if the only injury allegedly suffered by such natural person is the deprivation of such right." *Id.*

121.    Defendant City is liable as an employer, as set out above.

122.    Further, it is not a defense to liability under §§8-801 *et seq.* that a covered individual has qualified immunity or any other substantially equivalent immunity.

123.    Thus, the Court should award both compensatory and punitive damages against all parties (including the City), an order restraining future conduct, and all reasonable fees and court expenses pursuant to §8-805 of the Administrative Code.

124.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

125.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## JURY DEMAND

126.    Plaintiff requests a jury trial on all issues capable of being tried and determined by a jury pursuant to Fed. R. Civ. P. 38.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff demands judgment against the Individual Defendants and the City

of New York as follows:

i.    Actual and punitive damages against the individual Defendants in an amount to be
determined at trial;

ii.    Actual damages in an amount to be determined at trial against the City of New York, and
punitive damages pursuant to N.Y.C. Admin. C. § 8-805(1)(ii);

iii.    An appropriate restraining order pursuant to N.Y.C. Admin. C. § 8-805(3)

iv.    Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42
U.S.C. § 1988, N.Y.C. Admin. L. § 8-805(2), and New York common law; and

v.    Such other relief as the Court deems just and proper.

Dated:    Brooklyn, New York
July 21, 2025



**COHEN&GREEN P.L.L.C.**

By:_____/s/_____
J. Remy Green
Elena L. Cohen

1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888-9480
elena@femmelaw.com
remy@femmelaw.com


**GIDEON ORION OLIVER**


_____
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

*Attorneys for Plaintiff*